UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTOPHER M., : | |
|     Plaintiff, : | |
| : | |
| v.   : | C.A. No. 24-470-PAS |
| : | |
| FRANK BISIGNANO, : | |
| Commissioner of the Social Security : | |
| Administration, : | |
|     Defendant. : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Plaintiff Christopher M. is an individual of "advanced age" who worked for more than thirty years doing very heavy work as a concrete laborer; he has a high school education and is married. In 2014, Plaintiff had surgery on the cervical spine but continued working. In February 2022, he had surgery on the lumbar spine and stopped working. On August 18, 2022, his longtime treating orthopedist (who performed the lumbar surgery), Dr. Alan Daniels, opined that Plaintiff could return to work without restrictions, but, based on an EMG he had ordered, also made a new diagnosis – carpel tunnel syndrome ("CTS") – for which he recommended no treatment or medical intervention in reliance on Plaintiff's report that "symptoms are manageable and he does not wish to pursue further interventions or treatment for [CTS]." Tr. 453.

On August 22, 2022, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act, alleging disability beginning on February 10, 2022, based on neck fusion, spinal issues and bilateral CTS. Tr. 23, 27. After these claims were denied initially, and on reconsideration, an administrative law judge ("ALJ") found persuasive and relied on Dr. Daniels' opinion and on the prior administrative findings of non-examining physician expert, Dr. Usama Khayyal, and (partially) non-examining expert, Dr. Benjamin

Weinberg to find at Step Two that Plaintiff's lumber/cervical spine issues are severe impairments, that CTS is non-severe, and at the RFC[1] phase, that Plaintiff is limited to medium work with significant postural limitations but no manipulative limitations. Tr. 25-31. The ALJ rejected as non-persuasive the opinion of the treating Advanced Practice Registered Nurse ("APRN"), Kathleen Parker, because its extreme limitations are unsupported, including by her treating notes, and clash dramatically with Dr. Daniels' treating record and opinion, as well as with the balance of the record.

Plaintiff's appeal of the Commissioner's denial of his application rests on the argument that the ALJ erred by failing to incorporate some/all of the Parker limitations into his RFC. Now pending before the Court is Plaintiff's motion to reverse or remand for further proceedings the decision of the Commissioner denying his DIB application. ECF No. 10. Defendant has filed a counter motion for an order affirming the Commissioner's decision. ECF No. 13. Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

I. **Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

2

difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the law has been properly applied and decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42

U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II.  Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-06, 1509-11.

### A.  The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 433, 434 (1st Cir. 2020).

### B.  Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 404.1520c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. Id. § 404.1520c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim. See 20 C.F.R. § 404.1520c(c)(1)-(2). A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive regardless of who made the medical opinion. See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022). Other factors that are weighed in light of all the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 404.1520c(a), (c). However, the ALJ is required to articulate his consideration of factors other than consistency and supportability only when he has equally persuasive medical opinions or administrative findings about the same issue that are both supported and consistent but not the same; in that event, he is required to articulate the "other factors" that he relied on to resolve the conflict. Id. § 404.1520c(b)(3).

**III.     Background**

The focus of Plaintiff's appeal from the Commissioner's denial of disability benefits is on the ALJ's assessment of the opinion/findings evidence of record.

### A.  Opinions/Findings Regarding Lumber/Cervical Spine Issues

First, the ALJ found persuasive and relied on the opinion of the treating orthopedist, Dr. Daniels. Tr. 30-31. The record reflects that Dr. Daniels' treating relationship with Plaintiff spanned the period from June 2021 through late August 2022 with regular appointments throughout. Tr. 441-87. As confirmed by his treating notes, Dr. Daniels focused on Plaintiff's lumbar spine, cervical spine and parathesias/numbness in both lower and upper extremities. On August 18, 2022, (six months after the February 2022 lumbar spine surgery), Dr. Daniels opined that Plaintiff was able to return to work without limits. Tr. 453. In finding this opinion persuasive, the ALJ appropriately noted that it is supported by Dr. Daniels' many examinations and the results of testing, including MRI. See Tr. 30-31. The ALJ also appropriately considered the consistence of Dr. Daniels' opinion with the evidence of Plaintiff's activities, including (for example) Plaintiff's reported ability to lift a 100-pound table with the assistance of one other person resulting only in "some back strain." Tr. 30 (referencing Tr. 417).

Second, the ALJ found persuasive and relied on the relevant findings of the non-examining treating physician experts, Dr. Khayyal and Dr. Weinberg. Tr. 29-30. Drs. Khayyal and Weinberg both examined and considered the evidence of Plaintiff's cervical and lumbar spine issues, which the ALJ found to be severe, as well as Plaintiff's complaints of pain and discomfort, which they found are not entirely supported by the objective evidence. Tr. 65-68, 72-75. Both found Plaintiff able to perform medium work with significant postural limits but no manipulative limits.[2] Tr. 67-68, 74-75. The ALJ's RFC reflects these limitations. Tr. 26, 31.

---

[2] Both Drs. Khayyal and Weinberg also found one environmental limit – avoid concentrated exposure to hazards – which the ALJ adopted in his RFC. Tr. 29, 68, 75. As discussed *infra*, only Dr. Weinberg found the additional

6

### B.     Opinions/Findings Regarding CTS

Also at the August 18, 2022, appointment, Dr. Daniels focused on Plaintiffs' reported arm/hands symptoms and reviewed the results of an EMG he had ordered. Based on the EMG, Dr. Daniels diagnosed bilateral CTS, which he noted "fits more specifically with his symptoms" than the pre-existing diagnosis of cervical radiculopathy which had been based on an MRI from November 2021.³ Tr. 453. During this encounter, Dr. Daniels asked Plaintiff if he wanted a referral for CTS treatment. Tr. 453. Dr. Daniels recorded and relied on Plaintiff's response – "symptoms are manageable and he does not wish to pursue further interventions or treatment for [CTS]." Id. This treating note affords ample support for the ALJ's approach to these symptoms. Specifically, the ALJ cites this response at Step Two in finding that CTS is a non-severe impairment. Tr. 26. Further, this response is corroborated by the function report Plaintiff submitted in support of his application, in which he alleged that he has no hand symptoms that impact his ability to function. Tr. 202. And, as the ALJ noted, this response is corroborated by Plaintiff's statement to APRN Parker on May 17, 2023: "not wanting to recheck back or wrist pain [and] has retired also." Tr. 28, 551.

The non-examining physician experts also considered Plaintiff's CTS symptoms; their findings reflect that each took a slightly different approach from the other. Thus, at the initial phase, Dr. Khayyal found CTS to be a diagnosed impairment and noted Plaintiff's complaints of hand tingling and hand/arm numbness. Tr. 65-68. Dr. Khayyal did not find CTS to be a severe impairment and assigned no RFC limitations (including no manipulation limits) based on it,

---

environmental limit of avoidance of concentrated exposure to vibration based on CTS, which the ALJ did not adopt. Tr. 75.

³ While not relevant to the pending appeal, the Court notes that a post-period-in-issue EMG report was submitted to the Appeals Council, which confirms Dr. Daniels' opinion that the correct diagnosis for Plaintiff's upper extremity issues is CTS and not cervical radiculopathy. Tr. 15.

7

although he did find significant limits due the Plaintiff's cervical impairment (which had caused arm symptoms for many years, including while Plaintiff was working). By contrast, on reconsideration, Dr. Weinberg focused on the "consideration given to BUE [bilateral upper extremities] +CTS by EMG," and found CTS to be severe. Tr. 73, 75. However, the only RFC limit he added based on this finding is an environmental limit that Plaintiff must avoid "concentrated exposure of hands to vibration, vibratory tools." Tr. 75. Like Dr. Khayyal, Dr. Weinberg agreed with Dr. Khayyal that Plaintiff has no manipulation limitations. Tr. 74.

The ALJ appropriately weighed each of these sets of findings and, to the limited extent that they differ, adopted the Khayyal approach over the Weinberg findings. Tr. 29-30. In so doing, the ALJ relied *inter alia* on Plaintiff's statement to Dr. Daniels that his CTS symptoms were "manageable," on Plaintiff's decision to decline follow-up for CTS, as stated to both Dr. Daniels and APRN Parker, and on his report of minimal/no symptoms impacting his ability to use his hands and arms. Tr. 26, 29-30; see, e.g., Tr. 54-55 (Plaintiff testified that hand symptoms are nighttime aching, for which he has sought no treatment and does not wear nighttime brace, and numbness in some fingers of right hand that had persisted for nine years since the 2014 surgery after which he returned to work for many years). The ALJ's decision includes an appropriately detailed analysis of how he decided to rely on Dr. Khayyal over Dr. Weinberg in not adopting the environmental limit of no concentration exposure to hand vibration. Tr. 29-30. Importantly, however, in assigning no RFC manipulation limits, the ALJ relied on both Drs. Khayyal and Weinberg because their opinions on that point are aligned.

C.   **APRN Parker Opinion**

8

The Parker opinion, signed shortly before the ALJ hearing,[4] is entirely different. Somewhat puzzlingly, the opinion purports to be based only on Plaintiff's cervical/lumbar spinal symptoms and the MRIs supporting them; it has no reference to Dr. Daniels' CTS diagnosis or the EMG supporting it.[5]  Tr. 595-98.  In stark contrast to the Daniels return-to-work opinion, APRN Parker opined that Plaintiff is extremely limited in the ability to walk, sit or stand at one time.[6]  Tr. 596.  In contrast to Plaintiff's report to the physical therapist that he and a friend were able to lift a 100-pound table, APRN Parker opined that Plaintiff could never lift as much as twenty pounds.  Tr. 597.  In contrast to Plaintiff's report to Dr. Daniels that his hand/arm symptoms occur during the night, "improve[] when awake and moving," and are manageable, Tr. 451-53, and with nothing noted to support the finding, APRN Parker opined that Plaintiff's arm and fingers are so severely impaired that they cannot be used for fingering or reaching, for the right arm/hand, 90% to 95% of the day and, for the left arm/hand, half of the day.  Tr. 597.  With no explanation to support the finding, APRN Parker opined that Plaintiff would be both absent and off-task at the maximum level on the form she completed, precluding all work.  Tr. 598.  The opinion is materially inconsistent with APRN Parker's treating notation, made just four months before, that Plaintiff did "not want[] to recheck back or wrist pain," as well as that he had "retired."  Tr. 551.

---

[4] There are two iterations of the opinion because the full date was omitted from the first version.

[5] This omission is puzzling in light of Plaintiff's argument that the Parker opinion is "specifically in reference to limitations resulting from carpal tunnel, [which] are supported by [APRN Parker]'s own examinations."  ECF No. 10 at 6.  In contrast to her opinion, APRN Parker's encounters (two) with Plaintiff during the period in issue do note the CTS diagnosis (by Dr. Daniels) and her examinations reflect tenderness and reduced motion in various (unspecified) musculoskeletal areas, as well as reduced sensation in the arms/hands, although her notes contain no suggestion that these symptoms impacted the ability to function; her treating notes also reflect that Plaintiff declined the suggestion that his wrist be "rechecked" and that she recommended no treatment for these symptoms.  Tr. 550-51, 554-56.

[6] APRN Parker expressed no opinion on how much total sitting, standing and walking Plaintiff could sustain over a workday.  Tr. 596.

9

The ALJ carefully analyzed the Parker opinion. Tr. 31. He found it to be unsupported by APRN Parker's treating notes, which largely reflect normal strength, gait (albeit one observation of "limited ambulation") and reflexes, no difficulty with activities of daily living, only some tenderness and limited range of motion generally, and limited sensation/numbness in thighs and hands. The ALJ also noted that the opinion is inconsistent with the treating notes and back-to-work opinion of Dr. Daniels, copies of which were sent to APRN Parker. And the ALJ appropriately weighed the two treating source opinions, accepting the Daniels opinion as more persuasive than that of APRN Parker based *inter alia* on Dr. Daniels' status as a specialist[7] with more familiarity with Plaintiff's spine/arm/hand impairments and the functional limits they caused, while APRN Parker is a primary care source. Tr. 30-31.

IV.    **Analysis**

In the portion of his brief where his argument is developed, Plaintiff argues that the ALJ relied on an improper lay assessment of raw medical data and inappropriately "play[ed] doctor," ignoring Plaintiff's upper extremity limitations and dismissing Plaintiff's almost complete (as APRN Parker opined) inability to use his hands for manipulation. ECF No. 10 at 7-8. Somewhat confusingly, Plaintiff's brief opens with the broader assertion that the ALJ erred in not adopting an RFC that incorporates <u>all</u> of the Parker limitations, although the thrust of his argument is laser focused on the ALJ's failure to incorporate APRN Parker's manipulation limits into the RFC. ECF at 1, 6-8.

---

[7] The Court does not credit Plaintiff's argument that the ALJ erred in giving greater weight in regard to CTS to the opinion of Dr. Daniels as a specialist who was more familiar with Plaintiff's conditions and less to that of APRN Parker as a primary care provider. Thus, the record reflects Dr. Daniels' deployment of his expertise as a specialist in that, over an extended period, he carefully analyzed Plaintiff's hand/arm symptoms, studied the cervical MRI, ordered the EMG, made the CTS diagnosis and offered Plaintiff a referral to his upper extremity treatment team to treat it. Tr. 299-334, 410, 448-91. In contrast, APRN Parker saw Plaintiff only twice during the period in issue, merely noted CTS as a diagnosis (made by Dr. Daniels) and recorded Plaintiff's symptoms (parathesias/reduced sensation in the hand) but ordered no treatment other than "get back to walking" and take vitamins, except for (once) asking Plaintiff if he wanted a "recheck" for his wrists, which he declined. Tr. 551, 556.

Focusing first on the undeveloped argument – that the ALJ erred in failing to adopt the entirety of the Parker opinion – the Court may ignore it as waived. See Melissa G. v. Kijakazi, C.A. No. 20-00367-WES, 2021 WL 3124228, at *8 (D.R.I. July 23, 2021) ("throw-in arguments left for the Court to sort out on its own . . . are deemed waived"), adopted by text order (D.R.I. Aug. 18, 2021). Nevertheless, having analyzed the ALJ's approach to all of the opinions/findings in the case, the Court rejects this argument because the ALJ's determinations that the Daniels/Khayyal/Weinberg opinions are persuasive, while the Parker opinion is not, are untainted by legal error and amply supported by substantial evidence as summarized above.

Turning next to the developed argument that the ALJ erred by omitting APRN's Parker's manipulative limits, the Court finds that this argument fails because, far from relying on raw medical data, the ALJ's finding is amply supported by the treating notes of Dr. Parker (reflecting no CTS treatment referral based on Plaintiff's report that symptoms are manageable) and by the expert findings of both Drs. Khayyal and Weinberg (reflecting that Plaintiff's RFC is not impacted by manipulative limits), on which the ALJ appropriately relied. Further, the ALJ's finding of no manipulation limits also rests firmly on Plaintiff's own statements that he was not limited in his ability to use his hands, particularly during the day. See, e.g., Tr. 202 (in function report, Plaintiff noted no symptom impacting use of hands).

Having reviewed the entirety of the record, the Court finds that this is a case where the medical evidence is such that a "reasonable mind might accept as [more than] adequate to support [the ALJ's] conclusion." Biestek, 587 U.S. at 103 (internal quotation marks omitted). The Commissioner's decision denying benefits is therefore affirmed.

**V.     Conclusion**

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) is GRANTED.  The Clerk is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 25, 2025